# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA

**FEDERAL TRADE COMMISSION,**
**Plaintiff,**

**v.**

**GREAT AMERICAN PRODUCTS, INC.,**
**PHYSICIAN'S CHOICE, INC.,**
**STEPHAN KARIAN, and**
**MICHAEL TEPLITSKY, M.D., a/k/a**
**MICHAEL  TEPLISKY, M.D.,**
**Defendants.**

Civil Action No.

3:05cv170/RV/MD

## STIPULATED FINAL ORDER
## FOR PERMANENT INJUNCTION AND SETTLEMENT
## OF CLAIMS FOR MONETARY RELIEF AS TO GREAT AMERICAN
## PRODUCTS, INC., PHYSICIAN'S CHOICE, INC., STEPHAN KARIAN, AND
## MICHAEL TEPLITSKY, M.D.

Plaintiff, the Federal Trade Commission ("FTC" or "Commission") filed a

Complaint for Permanent Injunction and Other Equitable Relief ("Complaint") against

Great American Products, Inc., Physician's Choice, Inc., Stephan Karian, and Michael

Teplitsky, M.D., pursuant to Section 13(b) of the Federal Trade Commission Act ("FTC

Act"), 15 U.S.C. § 53(b), and the Telemarketing and Consumer Fraud and Abuse

Prevention Act ("Telemarketing Act"), 15 U.S.C. §§ 6101, *et seq.*, alleging violations of

Sections 5(a) and 12 of the FTC Act, 15 U.S.C. §§ 45(a) and 52, and the FTC's Trade

Regulation Rule entitled "Telemarketing Practices Sales Rule" ("TSR"), 16 C.F.R. Part

310. Defendants Great American Products, Inc., Physician's Choice, Inc., Stephan

Karian, and Michael Teplitsky agree to the entry of the following Stipulated Final Order

for Permanent Injunction and Settlement of Claims for Monetary Relief ("Order") to

resolve the allegations set forth in the Complaint. The Court, being advised in the

premises, finds:

### FINDINGS

1.  The Commission and the defendants stipulate and agree to this Order, without

    trial or final adjudication of any issue of fact or law, to settle and resolve all

    matters in dispute arising from the complaint to the date of entry of this Order. By

    entering this stipulation, the defendants do not admit or deny any of the

    allegations set forth in the complaint, other than jurisdictional facts. Nothing in

    this stipulation shall be considered or construed to be an admission of liability by

    the defendants.

2.  The defendants waive all rights to seek judicial review or otherwise challenge or

    contest the validity of this Order. The defendants also waive any claims that they

    may have held under the Equal Access to Justice Act, 28 U.S.C. § 2412,

    concerning the prosecution of this action to the date of this Order.

3.  This Court has jurisdiction over the subject matter of this case and jurisdiction

    over all parties. Venue in the Northern District of Florida is proper.

4.  The Complaint states a claim upon which relief can be granted, and the

    Commission has the authority to seek the relief it has requested.

Page 2 of 45

5. The activities of the defendants are in or affecting commerce, as defined in Section 4 of the FTC Act, 15 U.S.C. § 44.

6. Pursuant to Federal Rule of Civil Procedure 65(d), the provision of this Order are binding upon the defendants, and their officers, agents, servant, employees, and all other persons or entities in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise.

7. Nothing in this Order obviates the defendants' obligation to comply with Sections 5 and 12 of the Federal Trade Commission Act, 15 U.S.C. §§ 45 and 52.

8. This Order was drafted jointly by plaintiff and the defendants and reflects the negotiated agreement of the parties.

9. The paragraphs of this Order shall be read as the necessary requirements for compliance and not as alternatives for compliance and no paragraph serves to modify another paragraph unless expressly so stated.

10. Each party shall bear its own costs and attorney's fees.

11. Entry of this Order is in the public interest.

## DEFINITIONS

For purposes of this Order, the following definitions shall apply:

1. "Defendants" means:

   a. Great American Products, Inc. ("GAP"), a corporation, its divisions and subsidiaries, its successors and assigns;

   b. Physician's Choice, Inc. ("PCI"), a corporation, its divisions and

subsidiaries, its successors and assigns;

c.  Stephan Karian ("Karian") individually and in his capacity as a director or officer of GAP and PCI; and

d.  Michael Teplitsky, M.D., a.k.a. Michael Teplisky, M.D. ("Teplitsky") individually.

2.  "Competent and reliable scientific evidence" shall mean tests, analyses, research, studies, or other evidence based on the expertise of professionals in the relevant area, that has been conducted and evaluated in an objective manner by persons qualified to do so, using procedures generally accepted in the profession to yield accurate and reliable results.

3.  "Covered product or service" shall mean any dietary supplement, food, or drug, or any service purporting to provide health-related benefits.

4.  "Commerce" shall have the meaning defined in Section 4 of the Federal Trade Commission Act, 15 U.S.C. § 44.

5.  "Endorsement" shall mean as defined in 16 C.F.R. § 255.0(b).

6.  "Food," "drug," and "cosmetic" shall have the meaning defined in Section 15 of the FTC Act, 15 U.S.C. § 55.

7.  "Including" shall mean "including, without limitation."

8.  "HGH Supplements" shall mean "Ultimate HGH" and "Super HGH Booster" dietary supplements and any other product containing one or more of the ingredients in "Ultimate HGH" and "Super HGH Booster" as currently sold that is

promoted to increase the production of human growth hormone, reduce the effects of aging, or provide benefits associated with injected human growth hormone.

9.   "HGH Sprays" shall mean "Master HGH" and "Super HGH" homeopathic sprays and any other product containing one or more of the ingredients in "Master HGH" and "Super HGH" as currently sold that is promoted to contain human growth hormone, increase the production of human growth hormone, reduce the effects of aging, or provide benefits associated with injected human growth hormone.

10.   "Fat Blaster/Super Carbo Blocker" shall mean "Fat Blaster" and "Super Carbo Blocker" and any other product containing one or more of the ingredients in "Fat Blaster" and "Super Carbo Blocker" as currently sold (including garcinia cambogia, citrus aurantium, green tea extract, or chromium) that is promoted to cause weight loss by suppressing appetite, reducing conversion of carbohydrates to fats, or enhancing metabolism.

11.   "Wild Oregano Oil Products" shall mean "Ultimate Wild Oregano Oil" and "Super Wild Oregano Oil" and any other product containing one or more of the ingredients in "Ultimate Wild Oregano Oil" and "Super Wild Oregano Oil" as currently sold that is promoted to prevent cold and flu or relieve bacterial or viral infections and their symptoms.

12.   "Target Product" shall mean Ultimate HGH, Super HGH Booster, Master HGH, Super HGH, Fat Blaster, Super Carbo Blocker, Ultimate Wild Oregano Oil, and Super Wild Oregano Oil.

13. "Eligible Purchaser" shall mean a consumer who purchased, between January 1,

2001 and August 31, 2004, up to two shipments of a target product for which

he/she has not received a refund or chargeback of the total purchase cost; *provided*

*that*, Eligible Purchasers would include consumers who purchased two shipments

during the applicable time period and received a refund/chargeback for one, and

consumers who purchased three such shipments and received a refund/chargeback

for one or two shipments; but it would not include consumers who purchased

three shipments and requested no refund/chargeback or consumers who received

four or more shipments regardless of their refund/chargeback history.

## I.

## PROHIBITED REPRESENTATIONS FOR HGH SUPPLEMENTS

IT IS HEREBY ORDERED that defendants GAP, PCI, Teplitsky, and Karian,

directly or through any corporation, partnership, subsidiary, division, trade name, or other

device, and their officers, agents, servants, representatives, employees and all persons or

entities in active concert or participation with them who receive actual notice of this

Order, by personal service or otherwise, in connection with the manufacturing, labeling,

advertising, promotion, offering for sale, sale, or distribution of HGH Supplements, are

hereby permanently restrained and enjoined from making any representation, in any

manner, expressly or by implication, including through the use of a trade name or

endorsement, that any such product:

a.    Increases a consumer's growth hormone levels;

b.    Provides benefits similar to those shown in studies involving HGH

injections;

c.    Reverses the effects of aging on body composition, skin, memory, and

other physical functions; and/or

d.    Provides any physical or health-related benefits, including but not limited

to, loss of unwanted fat, increased muscle mass, reduction of wrinkles,

improvement in memory, improved heart function, improved immune

function, lower cholesterol and blood pressure, improved sexual function,

and/or improved vision;

unless the representation is true, nonmisleading, and, at the time it is made, they possess

and rely upon competent and reliable scientific evidence that substantiates the

representation.

## II.

## PROHIBITED REPRESENTATIONS FOR HGH SPRAYS

IT IS HEREBY ORDERED that defendants GAP, PCI, Teplitsky, and Karian,

directly or through any corporation, partnership, subsidiary, division, trade name, or other

device, and their officers, agents, servants, representatives, employees and all persons or

entities in active concert or participation with them who receive actual notice of this

Order, by personal service or otherwise, in connection with the manufacturing, labeling,

advertising, promotion, offering for sale, sale, or distribution of HGH Sprays, are hereby permanently restrained and enjoined from making any representation, in any manner, expressly or by implication, including through the use of a trade name or endorsement, that any such product:

    a.    Increases a consumer's growth hormone levels;

    b.    Provides benefits similar to those shown in studies involving HGH injections;

    c.    Reverses the effects of aging on body composition, skin, memory, and other physical functions; and/or

    d.    Provides any physical or health-related benefits, including but not limited to reduced body fat, increased lean muscle mass, enhanced sexual performance, youthful immune function, stronger bones, lower cholesterol and blood pressure, smoother, tighter skin, regrowth of hair, sharper vision, and improved cognitive function;

unless the representation is true, nonmisleading, and, at the time it is made, they possess and rely upon competent and reliable scientific evidence that substantiates the representation.

## III.

## PROHIBITED REPRESENTATIONS FOR
## FAT BLASTER/SUPER CARBO BLOCKER

IT IS HEREBY ORDERED that defendants GAP, PCI, Teplitsky, and Karian,

directly or through any corporation, partnership, subsidiary, division, trade name, or other

device, and their officers, agents, servants, representatives, employees and all persons or

entities in active concert or participation with them who receive actual notice of this

Order, by personal service or otherwise, in connection with the manufacturing, labeling,

advertising, promotion, offering for sale, sale, or distribution of Fat Blaster/Super Carbo

Blocker, are hereby permanently restrained and enjoined from making any representation,

in any manner, expressly or by implication, including through the use of a trade name or

endorsement, that any such product:

    a.    Suppresses appetite, reduces conversion of carbohydrates to fats, or

           enhances metabolism;

    b.    Causes weight loss; and/or

    c.    Provides any other health-related benefit,

unless the representation is true, nonmisleading, and, at the time it is made, they possess

and rely upon competent and reliable scientific evidence that substantiates the

representation.

## IV.

## PROHIBITED REPRESENTATIONS FOR WILD OREGANO OIL PRODUCTS

IT IS HEREBY ORDERED that defendants GAP, PCI, Teplitsky, and Karian, directly or through any corporation, partnership, subsidiary, division, trade name, or other device, and their officers, agents, servants, representatives, employees and all persons or entities in active concert or participation with them who receive actual notice of this Order, by personal service or otherwise, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of Wild Oregano Oil Products, are hereby permanently restrained and enjoined from making any representation, in any manner, expressly or by implication, including through the use of a trade name or endorsement, that any such product:

    a.     Prevents colds and flu;

    b.     When taken orally, treats and relieves bacterial and viral infections and their symptoms; and/or

    c.     Provides any health-related benefit,

unless the representation is true, nonmisleading, and, at the time it is made, they possess and rely upon competent and reliable scientific evidence that substantiates the representation.

## V.

## PROHIBITED REPRESENTATIONS FOR COVERED PRODUCTS AND SERVICES

IT IS FURTHER ORDERED that defendants GAP, PCI, Teplitsky, and Karian, directly or through any corporation, partnership, subsidiary, division, trade name, or other device, and their officers, agents, servants, representatives, employees and all persons or entities in active concert or participation with them who receive actual notice of this Order, by personal service or otherwise, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any covered product or service, are hereby permanently restrained and enjoined from making any representation, in any manner, expressly or by implication, including through the use of a trade name or endorsement, about the benefits, performance, efficacy, safety, or side effects of any covered product or service unless the representation is true, nonmisleading, and, at the time it is made, they possess and rely upon competent and reliable scientific evidence that substantiates the representation.

## VI.

## PROHIBITED REPRESENTATIONS ABOUT TESTS

IT IS FURTHER ORDERED that defendants GAP, PCI, Teplitsky, and Karian, directly or through any corporation, partnership, subsidiary, division, trade name, or other device, and their officers, agents, servants, representatives, employees and all persons or

entities in active concert or participation with them who receive actual notice of this

Order, by personal service or otherwise, in connection with the manufacturing, labeling,

advertising, promotion, offering for sale, sale, or distribution of any covered product or

service, are hereby permanently restrained and enjoined from misrepresenting, in any

manner, expressly or by implication, the existence, contents, validity, results, conclusions,

or interpretations of any test, study, or research.


## VII.

## FDA APPROVED CLAIMS

IT IS FURTHER ORDERED that:

1.  Nothing in this Order shall prohibit the defendants from making any

    representation for any drug that is permitted in labeling for such drug under any

    tentative final or final standard promulgated by the Food and Drug

    Administration, or under any new drug application approved by the Food and

    Drug Administration; and

2.  Nothing in this Order shall prohibit the defendants from making any

    representation for any product that is specifically permitted in labeling for such

    product by regulations promulgated by the Food and Drug Administration

    pursuant to the Nutrition Labeling and Education Act of 1990.

## VIII.

## FORMAT REPRESENTATIONS AND DISCLOSURES

IT IS FURTHER ORDERED that defendants GAP, PCI, Teplitsky, and Karian, directly or through any corporation, partnership, subsidiary, division, trade name, or other device, and their officers, agents, servants, representatives, employees and all persons or entities in active concert or participation with them who receive actual notice of this Order, by personal service or otherwise, in connection with the manufacturing, labeling, advertising, promotion, offering for sale, sale, or distribution of any product or program in or affecting commerce, shall not create, produce, sell, or disseminate:

A.    Any advertisement that misrepresents, directly or by implication, that it is not a paid advertisement;

B.    Any television commercial or other video advertisement fifteen (15) minutes in length or longer or intended to fill a broadcasting or cablecasting time slot of fifteen (15) minutes in length or longer that does not display visually, clearly and prominently, and for a length of time sufficient for an ordinary consumer to read it, within the first thirty (30) seconds of the advertisement and immediately before each presentation of ordering instructions for the product or service, the following disclosure:

"THE PROGRAM YOU ARE WATCHING IS A PAID ADVERTISEMENT FOR [THE PRODUCT OR SERVICE]."

*Provided that*, for the purposes of this provision, the oral or visual presentation of a telephone number, e-mail address or mailing address for viewers to contact for further information or to place an order for the product or service shall be deemed a presentation of ordering instructions so as to require the display of the disclosure provided herein; or

C.      Any radio commercial or other radio advertisement five (5) minutes in length or longer that does not broadcast, clearly and audibly and in a cadence sufficient for an ordinary consumer to hear and comprehend it, within the first thirty (30) seconds of the advertisement and immediately before each presentation of ordering instructions for the product or service or periodically through the program, but no more than approximately ten (10) minutes apart, the following disclosure:

"THE PROGRAM YOU ARE LISTENING TO IS A PAID ADVERTISEMENT FOR [THE PRODUCT OR SERVICE]."

*Provided that*, for the purposes of this provision, the presentation of a telephone number, e-mail address or mailing address for listeners to contact for further information or to place an order for the product or service shall be deemed a presentation of ordering instructions so as to require the announcement of the disclosure provided herein.

## IX.

## TELEMARKETING SALES RULE

IT IS FURTHER ORDERED that defendants GAP and Karian, directly or through any corporation, subsidiary, division, or other device, and their officers, agents, servants, employees and all persons or entities in active concert or participation with them who receive actual notice of this Order, by personal service or otherwise, each are hereby permanently restrained and enjoined from violating any provision of the TSR, 16 C.F.R. Part 310, as amended effective March 31, 2003, and as it may be amended thereafter, including but not limited to:

A.    The provisions requiring truthful, clear and conspicuous disclosures of material information in connection with the sales of goods or services, including total costs to purchase, receive, or use, and the quantity of, any goods or services, set forth in 16 C.F.R. § 310.3(a)(1)(i);

B.    The provisions requiring truthful, clear and conspicuous disclosures of all material terms and conditions in connection with sale of goods or services with a negative option feature, set forth in 16 C.F.R. § 310.3(a)(1)(vii);

C.    The provisions requiring express informed consent, and setting forth methods for evidencing express informed consent, in transactions involving preacquired account information and a free-to-pay conversion feature, set forth in 16 C.F.R. § 310.4(a)(6)(i)(A) and (B); and

D.    The provisions requiring express informed consent, and setting forth

Page 15 of 45

methods for evidencing express informed consent, in transactions involving preacquired account information but not described in 16 C.F.R. § 310.4(a)(6)(i), as set forth in 16 C.F.R. § 310.4(a)(6)(ii).

## X.

## MONETARY JUDGMENT AND CONSUMER REDRESS

IT IS FURTHER ORDERED THAT JUDGMENT IS HEREBY ENTERED against defendants GAP, PCI, Karian, and Teplitsky, jointly and severally, in the amount of $20,000,000; *provided*, that this judgment shall be satisfied pursuant to the defendants' full compliance with the conditions set forth in Part XI of this Order. If, upon motion by the Commission, the Court finds that defendants failed to fully comply with those conditions, the monetary judgement will be deemed unsatisfied and the entire judgment amount will be immediately due and payable, less any amounts defendants have previously paid. Should this judgment be modified as to the monetary liability of defendants, this Order in all other respects shall remain in full force. Any proceedings instituted under this paragraph shall be in addition to and not in lieu of any other proceedings the Commission may initiate in order to enforce this Order. Solely for the purposes of reopening this judgment or enforcing this Part X or Part XI, defendants waive any right to contest any of the allegations set forth in the Complaint filed in this matter or the monetary judgment referenced above.

## XI.

## REDRESS PROGRAM

IT IS FURTHER ORDERED that defendants shall provide redress to eligible

purchasers of the target products in accordance with the provisions of this part:

A.    Within ten (10) days after entry of this Order, defendants shall provide to

the Commission, with regard to each of the target products, a searchable

electronic file containing the name and contact information of each

eligible purchaser (the "Consumer Databases"), updated through the

National Change of Address database, accompanied by a sworn affidavit

attesting to its accuracy.

B.    The redress program shall be administered by a Redress Administrator

selected by the FTC.  The defendants shall have no right to contest the

FTC's selection of the Redress Administrator.  The Consumer Databases

will be provided by the FTC to the Redress Administrator.

C.    The parameters of the refund program are as follows:  Redress Eligibility

Notices in the form set forth in Appendix A, containing the Claim Form

set forth in Appendix B, shall be issued to the eligible purchasers in the

Consumer Databases by the Redress Administrator.  Eligible purchasers in

the Consumer Databases who return signed Claim Forms within fifteen

days after the time set forth on the Redress Eligibility Notice are

Participating Purchasers who shall be paid a refund based upon their

payments for target products.  If complete redress payments to Participating Purchasers plus the costs of administration for the redress program exceeds the Twenty Million Dollar ($20,000,000) judgment amount set forth in Part X, redress will be provided on a pro rata basis, after deducting the costs for administration of the redress program.

D.    The defendants shall fund the redress program as follows:

1.    Within five (5) days after entry of this Order, defendants, jointly and severally, shall pay to the FTC by electronic funds transfer the sum of Six Million Five Hundred Thousand Dollars ($6,500,000). The FTC, or its Redress Administrator, shall pay this fund into a Redress Account to be used to pay redress to Participating Purchasers and the costs for administration of the redress program. If, after the completion of the claims process in subpart C of this Part XI, the amount of complete redress payments to Participating Purchasers plus the costs of administration for the redress program is less than the funds in the Redress Account, then any remaining funds shall be deposited as equitable disgorgement into the U.S. Treasury.

2.    In the event that funds in the Redress Account provided pursuant to subpart D(1) of this Part XI are insufficient to provide complete redress payments to Participating Purchasers pursuant to subpart C

of this Part XI plus the costs of administration for the redress program, defendants, jointly and severally, within five (5) days of receiving notice from the FTC of the Redress Account deficiency, shall pay to the FTC by electronic funds transfer up to Three Million Five Hundred Thousand Dollars ($3,500,000) to cover the actual remaining costs of redress and administration.

3. In the event that funds in the Redress Account provided pursuant to subparts D(1) and (2) of this Part XI are insufficient to provide complete redress payments to Participating Purchasers pursuant to subpart C of this Part XI plus the costs of administration for the redress program, defendants, jointly and severally, on or before 365 days following the date of entry of this Order, shall provide such additional monies, up to Ten Million Dollars ($10,000,000), as are necessary to cover the actual remaining costs of redress and administration.

4. Defendants relinquish all dominion, control, and title to the payments made pursuant to this Part. Defendants shall make no claim to or demand for return of the payments, directly or indirectly, through counsel or otherwise; and in the event of bankruptcy of one or more defendants, defendants acknowledge that the payment is not part of the debtor's estate, nor does the

estate have any claim or interest.

5.   The payments made pursuant to this Part represent redress and are intended to be compensatory in nature, and no portion of such payment shall be deemed a payment of any fine, penalty, or punitive assessment.

E.   In order to secure the potential payment of the outstanding Thirteen Million Five Hundred Thousand Dollars ($13,500,000) in redress funds as set forth in subpart D(2) and (3) above, Defendants shall, within five (5) days of entry of this Order:

1.   Deposit into an interest bearing escrow account the sum of Three Million Five Hundred Thousand Dollars ($3,500,000) consistent with the Escrow Agreement set forth in Appendix C hereto; and,

2.   Cause to be transferred to the Commission a Security Interest in assets with a value of $10 million, as specified in Appendix D hereto, and perform all steps necessary to perfect said security interest.

3.   Within twenty (20) days after the final date for return of Claim Forms by Participating Consumers as set forth in subpart C of this Part XI, the FTC will calculate the total amount of redress requested by them, plus the reasonably anticipated costs of refund administration, and add 30% of the estimated costs (to account for

unanticipated cost over-runs) and advise the defendants of this total ("the total estimated program costs").

a.      In the event that the total estimated program costs is less than Six Million Five Hundred Thousand Dollars ($6,500,000), the Commission will authorized the divestiture of the funds in the Escrow Account and the release of its Security Interest in the assets identified in Appendix D;

b.      In the event that the total estimated program costs is at least Six Million Five Hundred Thousand Dollars ($6,500,000), but less than Ten Million Dollars ($10,000,000), the Commission will, after the defendants make the payment required by subpart D(2) of this Part XI, authorize the release of the funds in the Escrow Account by a commensurate amount and the release of its Security Interest in the assets identified in Appendix D;

c.      In the event that the total estimated program costs is at least Ten Million Dollars ($10,000,000), but less than Twenty Million Dollars ($20,000,000), the Commission will authorize the release of its security interest in the assets identified in Appendix D by a commensurate amount.

d.      Within twenty (20) days after closure of all redress and administration accounts, the FTC shall authorize divestiture of any

remaining escrow funds and release of its remaining security

interest in the assets identified in Appendix D.

## XII.

## RIGHT TO REOPEN

IT IS FURTHER ORDERED that:

A.    The Commission's agreement to this Order is expressly premised upon the

truthfulness, accuracy, and completeness of the defendants' sworn

financial statements and supporting documents submitted to the

Commission, namely:

1.    With regard to GAP, PCI, and Karian:

a. the records showing sales of the target products and costs

incurred in making such sales;

b. the documentation submitted October 4, 2004, including the

financial statement of Stephan Karian; tax returns for Stephan

Karian for the years 2001-2003; financial statement of Great

American Products, Inc. ("GAP"); the tax returns for GAP for the

years 2001-2003, the financial statement for Physician's Choice,

Inc. ("PCI"), and the tax returns for PCI for the years 2001-2003;

and

c. the documentation submitted November 3, 2004, including the

Summary of Net Profit and Officer's Salaries, and the

documentation submitted November 10, 2004, including the 2004

Profit and Loss sheet for GAP & PCI.

2.    With regard to Teplitsky:

a. the documentation submitted October 7, 2004, including the

individual financial statement of Dr. Michael Teplitsky and the tax

returns for Dr. Michael Teplitsky for the years 2000-2002; and

b. the documentation submitted October 29, 2004, including the

corporate tax returns for Customer Care Inc. (2000-2002), DR

Marketing (2000-2002), 415 Oceanview Ave., Inc. (2001-2002),

D&J Medical Management & Billing (2001-2002), and Choice

Physician, PC (2001-2002);

Such financial statements and supporting documents contain material

information upon which the Commission relied in negotiating and

agreeing to this Order.

B.    If, upon motion by the Commission, this Court finds that GAP, PCI, or

Karian have misrepresented or failed to disclose any material asset in the

financial statements and supporting documents identified in subpart A(1)

of this Part XII, the Court shall enter a judgment against GAP, PCI, and

Karian, jointly and severally, in favor of the Commission, in the amount of

Seventy Seven Million Dollars ($77,000,000) minus any payments

previously made by them under Part X, which amount would be rendered

immediately due and payable. If, upon motion by the Commission, this Court finds that Teplitsky has misrepresented or failed to disclose any material asset in the financial statements and supporting documents identified in subpart A(2) of this Part XII, the Court shall enter a judgment against Teplitsky, in favor of the Commission, in the amount of Three Million Dollars ($3,000,000) minus any payments previously made by him under Part X, which amount would be rendered immediately due and payable. In either event, interest computed at the rate prescribed in 28 U.S.C. § 1961 shall immediately begin to accrue on the unpaid balance.

C.    For the purposes of this Part and any subsequent proceedings to enforce payment, including but not limited to a non-dischargeability complaint filed in a bankruptcy proceeding, the defendants agree not to contest any of the allegations in the Complaint filed in this action. *Provided however*, that in all other respects this Stipulated Final Order shall remain in full force and effect unless otherwise ordered by the Court; and *provided further*, that proceedings instituted under this Part are in addition to, and not in lieu of, any other civil or criminal remedies that may be provided by law, including any other proceedings the Commission may initiate to enforce this Order.

## XIII.

## NOTIFICATION TO COMMISSION

IT IS FURTHER ORDERED that a requirement in this Order that any defendant "notify the Commission" shall mean that the defendant shall send the necessary information via first-class mail, costs prepaid, to the Associate Director for Advertising Practices, Federal Trade Commission, 600 Pennsylvania Ave., N.W., Washington, D.C. 20580. Attn: <u>FTC v. Great American Products, Inc. et al.</u>, Civil Action No. _____ (N.D. Fl.).

## XIV.

## ACKNOWLEDGMENT OF RECEIPT OF ORDER

IT IS FURTHER ORDERED that, within five (5) business days after receipt by the defendants of this Order as entered by the Court, defendant Karian, individually and on behalf of defendants GAP and PCI; and defendant Teplitsky, individually, shall execute and submit to the Commission a truthful sworn statement, in the form shown on Appendix E, that shall acknowledge receipt of this Order.

## XV.

## DISTRIBUTION OF ORDER BY DEFENDANTS

IT IS FURTHER ORDERED that, for a period of three (3) years from the date of entry of this Order, defendants shall deliver copies of the Order as directed below:

A.  Defendants GAP and PCI must deliver a copy of this Order to all of their principals, officers, directors, and managers, and to all of their employees, agents, and representatives who engage in conduct related to the subject matter of the Order. For current personnel, delivery shall be within ten (10) days of entry of this Order. For new personnel, delivery shall occur prior to their assuming their position or responsibilities.

B.  Defendants Karian and Teplitsky as Control Persons: For any business that Karian or Teplitsky controls, directly or indirectly, or in which Karian, or Teplitsky has a majority ownership interest, each of them must deliver a copy of this Order to all principals, officers, directors, and managers of that business. Karian and Teplitsky must also deliver copies of this Order to all employees, agents, and representatives of those businesses who engage in conduct related to the subject matter of the Order. For current personnel, delivery shall be within ten (10) days of entry of this Order. For new personnel, delivery shall occur prior to their assuming their position or responsibilities.

C.  Defendants Karian and Teplitsky not as Control Persons: For any business where Karian or Teplitsky is not a controlling person of a business but otherwise engages in conduct related to the subject matter of this Order, each of them must deliver a copy of this Order to all principals and managers of such business before engaging in such conduct.

D.  Defendants must secure a signed and dated statement acknowledging receipt of the Order, within thirty (30) days of delivery, from all persons receiving a copy of the Order pursuant to this Part.

E.  Defendants shall maintain for a period of three (3) years after creation, and upon reasonable notice make available to representatives of the Commission, the original signed and dated acknowledgments of the receipt of copies of this Order required by this Part.

## XVI.

## COMMISSION'S AUTHORITY TO MONITOR COMPLIANCE

IT IS FURTHER ORDERED that the Commission is authorized to monitor defendants' compliance with this Order by all lawful means, including but not limited to the following:

A.  The Commission is authorized, without further leave of court, to obtain discovery from any person in the manner provided by Chapter V of the Federal Rules of Civil Procedure, Fed. R. Civ. P. 26 - 37, including the use of compulsory process pursuant to Fed. R. Civ. P. 45, for the purpose of monitoring and investigating defendants' compliance with any provision of this Order;

B.  The Commission is authorized to use representatives posing as consumers and suppliers to defendants, defendants' employees, or any other entity

managed or controlled in whole or in part by defendants, without the

necessity of identification or prior notice; and

C.    Nothing in this Order shall limit the Commission's lawful use of

compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15

U.S.C. §§ 49, 57b-1, to investigate whether defendants have violated any

provision of this Order or Section 5 or 12 of the FTC Act, 15 U.S.C.

§§ 45, 52.

## XVII.

## COMPLIANCE REPORTING

IT IS FURTHER ORDERED that, in order that compliance with the provisions of

this Order may be monitored:

A.    For a period of three (3) years from the date of entry of this Order, each

individual defendant shall notify the Commission of the following:

1.    Any changes in his residence, mailing addresses, and telephone

numbers, within twenty (20) days of the date of such change; and

2.    Any changes in his employment status (including self-

employment) within twenty (20) days of such change. Such notice

shall include the name and address of each business at which that

defendant is employed or hired as a consultant or independent

contractor for personal services in his individual capacity, a

statement of the nature of the business, and a statement of defendant's duties and responsibilities in connection with the business or employment.

B.    For a period of three (3) years from the date of entry of this Order, defendants GAP and PCI each shall notify the Commission of any proposed change in its structure, such as creation, incorporation, dissolution, assignment, sale, creation or dissolution of subsidiaries, or any other change that may affect compliance obligations arising out of this Order, thirty (30) days prior to the effective date of any proposed change; *provided, however*, that, with respect to any proposed change in the corporation about which a defendant learns less than thirty (30) days prior to the date such action is to take place, it shall notify the Commission as soon as is practicable after obtaining such knowledge.

C.    Ninety (90) days after the date of entry of this Order, defendants shall provide a written report to the FTC, sworn to under penalty of perjury, setting forth in detail the manner and form in which they have complied and are complying with this Order.  This report shall include but not be limited to:

1.    The individual defendants' then current residence addresses and telephone numbers;

2.    The individual defendants' then current employment, business

addresses, and telephone numbers, a description of the business activities of each such employer, and the defendants' title and responsibilities for each employer;

3. For defendants GAP and PCI, their then current business addresses, telephone numbers, a description of their business activities, identification of all products that they advertise or sell, and copies of all of their current advertising;

4. A copy of each acknowledgment of receipt of this Order obtained by defendants pursuant to Part XV; and

5. A statement describing the manner in which defendants have complied and are complying with Parts I through IX.

D. Upon written request by a representative of the Commission, defendants shall submit additional written reports (under oath, if requested) and produce documents on thirty (30) days' notice with respect to any conduct subject to this Order.

E. For purposes of the compliance reporting required by this Part, if any defendant is no longer represented by counsel the Commission is authorized to communicate directly with that defendant.

## XVIII.

## RECORD KEEPING PROVISIONS

IT IS FURTHER ORDERED that, for a period of six (6) years from the date of entry of this Order, defendants GAP and PCI and any business where (1) individual defendants Karian or Teplitsky is the majority owner or an officer or director of the business, or directly or indirectly manages or controls the business and where (2) the business engages in the advertising, marketing, promotion, offering for sale, distribution or sale of any covered product or service; and their agents, employees, officers, corporations, successors, and assigns, and those persons in active concert or participation with them who receive actual notice of this Order by personal service or otherwise, are hereby restrained and enjoined from failing to create and retain, unless otherwise specified:

A.    Accounting records that reflect the cost of goods or services sold, revenues generated, and disbursement of such revenues;

B.    Personnel records accurately reflecting: the name, address, and telephone number of each person employed in any capacity by such business, including as an independent contractor; that person's job title or position; the date upon which the person commenced work; and the date and reason for the person's termination, if applicable;

C.    Customer files containing the names, addresses, telephone numbers, dollar amounts paid, quantity of items or services purchased, and description of

Page 31 of 45

items or services purchased, to the extent such information is obtained in the ordinary course of business;

D.   Records accurately reflecting all consumer complaints and refund requests (whether received directly, indirectly, or though any third party), including the date of the complaint, the name, address, and other contact information provided by the consumer, and the substance of the complaint, and any responses to those complaints or requests;

E.   Copies of all advertisements, promotional materials, sales scripts, training materials, or other marketing materials utilized in the advertising, marketing, promotion, offering for sale, distribution or sale of any covered product or service, to the extent such information is prepared in the ordinary course of business;

F.   All materials that were relied upon in making any representations contained in the materials identified in Paragraph E above, including all documents evidencing or referring to the accuracy of any claim therein or to the efficacy of any covered product or service, including, but not limited to, all tests, reports, studies, demonstrations, or other evidence that confirm, contradict, qualify, or call into question the accuracy of such claim or the efficacy of such covered product or service;

G.   Records accurately reflecting the name, address, and telephone number of each manufacturer or laboratory engaged in the development or creation of

any testing obtained for the purpose of advertising, marketing, promoting, offering for sale, distributing, or selling any covered product or service; and

H.  Copies of all contracts concerning the manufacturing, labeling, advertising, marketing, promotion, offering for sale, sale, or distribution of any covered product or service.

//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//
//

Feb 10 2005 3:47PM    HP LASERJET 3330              S167677613                    P.2

WRF.LLP FAX CTR.       Fax:202-719-7049      Feb 10 2005 14:39      P.02

Sent By: EWORD & ASSOC., PC;        703 425 4090;    Feb-10-05 12:59PM;    Page 2/8

## XIX.

### RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court shall retain jurisdiction of this

matter for purposes of construction, modification, and enforcement of this Order.

SO STIPULATED:

JANET M. EVANS
LYNDA ROZELL
Federal Trade Commission
600 Pennsylvania Ave., N.W.,
NJ-3126
Washington, D.C. 20580
(202) 326-2125
(202) 326-3259 (facsimile)
Attorneys for Plaintiff

GREAT AMERICAN PRODUCTS, INC.
By Stephen Karian, Director

PHYSICIAN'S CHOICE, INC.
By: Stephen Karian, President

STEPHEN KARIAN, individually and as an
officer or director of Great American Products,
Inc. and Physician's Choice, Inc.

MICHAEL TEPLITSKY, individually

HUGH LATIMER
Wiley Rein & Fielding
1776 K Street NW
Washington, DC 20006

CLAUDIA LEWIS-ENG
Emord & Associates, PC
1050 Seventeenth Street, N.W., Suite 600
Washington, D.C. 20036
Attorneys for Defendants

SO ORDERED:

UNITED STATES DISTRICT JUDGE  Date

PAGE 31                          GAP               8576419ae91d5332       08:08 2008/15/10